IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Andrew Plummer, #299191, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>Investigator Orr; Investigator Branham; )<br>SCDC Warden George T. Hagan; )<br>and Director Ozmint, in their )<br>individual and official capacities, )<br>)<br>Defendants. )<br>) | Civil Action No.2:10-cv-01966-TLW-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The plaintiff, state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983, and South Carolina state law. This matter is before the Court upon a Motion for Summary Judgment filed by Defendants Orr, Hagan, Ozmint, and Branham. (Dkt. No. 77.)[1]

---

[1] The undersigned notes that two Defendants that have not been served remain on the Court's docket in the instant case: Defendant Elaine Sabb, Clerk of Court for Allendale Magistrate Court; and Defendant Attorney Woodrow Gooding, Jr., state appointed. On December 22, 2010, the undersigned entered an Order stating, *inter alia*, "[T]he Clerk of Court shall **not** issue any summonses for Defendants Sabb or Gooding, nor shall the Clerk forward this matter to the United States Marshal for service of process on these Defendants at this time." (Dkt. No. 54) Despite this no-serve order, it does not appear that dismissal of these Defendants has gone to the District Judge for review. Accordingly, the undersigned now recommends dismissal of Defendant Sabb because she is entitled to quasi-judicial immunity. See Cook v. Smith, 812 F. Supp. 561, 562 (E.D. Pa. 1993); Mourat v. Common Pleas Court of Lehigh County, 515 F. Supp. 1074, 1076 (E.D. Pa. 1981); see also Dieu v. Norton, 411 F.2d 761, 763 (7th Cir. 1969), abrogated on other grounds by Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002) ("Defendants Circuit Judge Cotton, court reporter Tellschow and circuit court clerk Block were all acting in the discharge of their official responsibilities[;] [a]s such they were protected by the traditional doctrine of judicial immunity, as this rule of law was not abolished by § 1983, supra."). In addition, the undersigned recommends dismissal of Defendant Gooding because an attorney, whether retained, court-appointed, or a public defender, does not act under color of state law, which is a jurisdictional prerequisite for any civil action brought under § 1983. See Deas v. Potts, 547 F.2d 800 (4th Cir. 1976)(private attorney); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980)(court-appointed attorney);Polk County v. Dodson, 454 U.S. 312, 317-24 (1981)(public defender); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982)("Careful adherence to the 'state action' requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."). Defendant Gooding, a lawyer appointed by a state court to represent Plaintiff,

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about July 28, 2010. On June 20, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 77). By order filed June 23, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On or about August 3, 2011, Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment. (Dkt. No. 84.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at Kershaw Correctional Institution, brings the instant action pursuant to 42 U.S.C. § 1983 and South Carolina state law. (See Dkt. No. 1.) Plaintiff alleges that on August 4, 2006, while he was housed in the Allendale Correctional Institution, a fight broke out between several inmates, and Inmate Knotts stabbed Inmate Bettis several times. (Dkt. No. 1-2 at 3 of 5.) Plaintiff alleges his "name came about from unknown sources," and he was interviewed by an unknown SLED agent that day, even though he asked "not to be questioned and to be accompanied by an attorney." (Id.) Plaintiff asserts that Defendant Branham interviewed him several weeks later about the stabbing and that Plaintiff again stopped the interview "at the beginning requesting a[n] attorney be present as Plaintiff had no involvement in the stabbings." (Id.) Plaintiff alleges that Defendant Branham then stated that Plaintiff would be charged with assault and battery with intent to kill if the Plaintiff "did not answer the questions or submit to a polygraph test." (Id.)

---

did not act under color of state law in connection with his legal representation of Plaintiff. As a result, Plaintiff's Complaint fails to state a viable § 1983 claim against Defendant Gooding. The undersigned therefore recommends dismissal of Defendants Sabb and Gooding.

2

According to Plaintiff, Plaintiff continued to refuse to answer questions without an attorney, though Defendant Branham continued trying to question Plaintiff. (Id.)

Plaintiff alleges he subsequently returned to the Allendale Jail where he was "given a no-bond by an unknown judge" as well as a slip to fill out for a preliminary hearing. (Id.) Plaintiff alleges he filled out the slip requesting a preliminary hearing and attached a "self-made motion for counsel representation." (Id.) Plaintiff states that in September of 2006, a preliminary hearing was held on prison grounds and that the only persons present were the Plaintiff, the judge, SLED Investigator Orr, SLED Investigator Branham, and an "unknown prison guard who stood at the door." (Id.) Plaintiff alleges that during the hearing, he requested counsel, but the judge denied that request, and that the hearing was continued over his objection. (Id. at 3-4.) Plaintiff further contends he filed numerous motions "but received no response." (Id. at 4.)

Plaintiff alleges that he was charged with assault and battery with intent to kill on "false allegations," and that "[t]he detainer was dropped on [him] from August 18, 2006, to August 29, 2008, which is two years worth of time." (Id.) According to Plaintiff, the charge against him was dropped on August 29, 2008. (Dkt. No. 1 at 2.) Plaintiff brings the instant action against Sheriff Investigator Orr, SCDC Warden Hagan, Director Ozmint, and Sheriff Investigator Branham. (See Dkt. No. 1.) Plaintiff states that he seeks redress under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights and also brings claims for "defamation of character; false arrest; illegal detention; [and] . . . negligence." (Dkt. No. 1-2 at 2 of 5.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material

fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants Orr, Hagan, Ozmint, and Branham filed a Motion for Summary Judgment on June 20, 2011. (See Dkt. No. 77.) These Defendants moved for summary judgment on numerous grounds, contending Plaintiff's claims fail for the following reasons:

> (A) Plaintiff's claims are barred by the Statute of Limitations;
> (B) the Plaintiff has failed to exhaust administrative remedies;
> (C) the Plaintiff has failed to establish that the Defendants have deprived him of any constitutionally protected right;
> (D) the individually-named defendants can not be held liable on a theory of respondeat superior;
> (E) the individual defendants are immune from suit;
> (F) the Eleventh Amendment prohibits suit against these Defendants;
> (G) Plaintiff's claims are frivolous;
> (H) punitive damages are not recoverable;
> (I) Plaintiff's claims are barred by the South Carolina Tort Claims Act;
> (J) Defendants are not proper parties under the Tort Claims Act;
> (K) the Officers had a ministerial duty to serve an arrest warrant and the arrest was lawful;
> (L) the Plaintiff's damages, if any, were due to his sole negligence or his comparative negligence exceeding 50%;
> (M) the Defendants are not liable for the acts of third persons; and
> (N) the arrest warrant is a public document, ]and] any alleged publication was privileged and was made without malice.

4

(Mem. in Supp. of Mot. for Summ. J. at 9.) Plaintiff filed a Response in Opposition on or about August 3, 2011. (Dkt. No. 84.)

**A. Statute of Limitations**

Defendants Orr, Hagan, Ozmint, and Branham contend they are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. There is no federal statute of limitations for actions under § 1983, and it is well settled that the limitations period for § 1983 claims is to be determined by the analogous state law statute of limitations. See Williams v. Garcia, 471 U.S. 261 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelly & Sons, Co., 541 U.S. 369 (2004); see also Owens v. Okure, 488 U.S. 235, 240-41 (1989) ("Because § 1983 claims are best characterized as personal injury actions, . . . a State's personal injury statute of limitations should be applied to all § 1983 claims." (internal quotation marks omitted)). In South Carolina, the general or residual statute of limitations for personal injury claims is codified at South Carolina Code § 15-3-530(5), which provides the statute of limitations is three years for "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law . . . ." S.C. CODE ANN. § 15-3-530(5); see also S.C. CODE ANN. § 15-3-550 (claims for false imprisonment governed by a two-year statute of limitations).

Defendants contend Plaintiff's claims are subject to–at a maximum–a three year statute of limitations. (See Mem. in Supp. at 9-10.) Defendants state, "Plaintiff . . . was implicated in the fight which occurred on August 4, 2006. He was served with an arrest warrant on August 17, 2006. He filed the instant suit on or about July 27, 2010, almost four (4) years after being served with the warrant and well beyond the statute of limitations." (Id. at 10.) In his Response in Opposition, Plaintiff claims his suit is timely: "[The] charge of Assault and Battery With Intent to Kill was dismissed on August 29, 2008, and [this] action

5

was brought before the court July 27, 2010, which meets the 2 year time bar." (Dkt. No. 84 at 2 of 5.)

Plaintiff's § 1983 claims are subject to a three-year statute of limitations. See Owens, 488 U.S. at 240-41; S.C. CODE ANN. § 15-3-530(5); see also Williams v. City of Sumter Police Dep't, No. 3:09-2486-CMC-PJG, 2011 WL 723148, at *3 (D.S.C. Feb. 23, 2011) (concluding the plaintiff had three years in which to file his § 1983 action). A review of Defendants' motion and Plaintiff's response indicates the parties disagree over when the cause of action accrued. While neither expressly state when the cause of action accrued, Defendants appear to contend it accrued on August 17, 2006, when Plaintiff was served with the at-issue arrest warrant. (See Mem. in Supp. at 10.) Plaintiff, on the other hand, contends accrual occurred on August 29, 2008, when the charge against him was dismissed. (See Dkt. No. 84 at 2 of 5.)

To the extent Plaintiff brings a claim for "false arrest," that claim accrued long before the charges against Plaintiff were dropped. See Wallace v. Kato, 549 U.S. 384 (2007). As the Supreme Court stated in Wallace,

> Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends. . . .
> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself. Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date. . . .

6

Wallace, 549 U.S. at 389-90 (internal quotation marks and citations omitted); see also Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 182 (4th Cir. 1996) (finding the plaintiff's § 1983 claim for an alleged warrantless arrest unsupported by probable cause accrued on the date of the plaintiff's arrest, but noting the claim analogous to malicious prosecution was not time-barred because since "§ 1983 actions seeking damages for unconstitutional arrest or confinement imposed pursuant to legal process-claims most analogous to the common-law tort of malicious prosecution-must allege and prove a termination of the criminal proceedings favorable to the accused, such claims do not accrue until a favorable termination is obtained"). Because Plaintiff's arrest occurred on August 17, 2006, and Plaintiff filed the instant action approximately four years later, Plaintiff's claims for "false arrest" are not timely.

Although the undersigned concludes Plaintiff's claim for "false arrest" is barred by time, the undersigned concludes one § 1983 claim is timely.[2] To the extent Plaintiff seeks damages pursuant to § 1983 for unconstitutional arrest imposed pursuant to legal process,[3] that claim could not have accrued before August 29, 2008; this claim is therefore timely. The undersigned therefore recommends granting Defendants' motion with respect to Plaintiff's

---

[2] As noted above, the statute of limitations for a § 1983 claim is three years. Plaintiff's claims for violations of his right to counsel are time-barred. Plaintiff was arrested on August 17, 2006, and was indicted on October 23, 2006. (Branham Aff. ¶¶ 7-8.) Because Plaintiff placed his Complaint in the prison mail system on July 23, 2010, only conduct that occurred on or after July 23, 2007, is not barred by time. Evidence presented by Defendants indicates that–with the exception of Officer Johnson–the interviews conducted by Defendants took place on or before September 6, 2006. (See Exhibits to Branham Aff.) Plaintiff alleges in his Complaint that Branham attempted to speak with Plaintiff without an attorney a few weeks after the incident. (See Dkt. No. 1-2 at 3 of 5.) Moreover, Defendant Branham states in his Affidavit that Plaintiff refused to talk with him and that as a result, Branham did not interview Plaintiff. (Branham Aff. ¶ 6.) Plaintiff himself alleges that he refused to talk to investigators without his attorney. It appears that any conduct personal to the Defendants named herein occurred in 2006. This claim is therefore time-barred.

[3] The undersigned will hereinafter refer to this claim as the "1983 malicious prosecution claim."

7

claims pursuant to § 1983, with the exception of the § 1983 malicious prosecution claim, on the grounds that those claims are barred by time.

**B. Whether Defendants Deprived Plaintiff of Any Constitutionally Protected Right**

In their Motion for Summary Judgment, Defendants argue that Plaintiff failed to establish that Defendants deprived him of any constitutionally protected right; they state, "[T]here is no cause of action for false arrest under 42 U.S.C. § 1983 unless the arresting officer lacked probable cause." (Mem. in Supp. at 14.) Defendants assert that they are entitled to summary judgment because probable cause for the arrest existed. (Id. at 15.)

As noted above, Plaintiff's claim for "false arrest" is time-barred. However, because Plaintiff also alleges a § 1983 malicious prosecution claim, and lack of probable cause is required for both, the undersigned will address Defendants' argument that probable cause existed. In order to prevail on the § 1983 malicious prosecution claim, Plaintiff must show Defendants "seized [Plaintiff] pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in [Plaintiff's] favor." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005); see also Robinson v. S.C. Dep't of Public Safety, No. 2:06-1288-SB, 2007 WL 840338, at *4 (D.S.C. Mar. 15, 2007) (noting that while there is no "independent cause of action for malicious prosecution under § 1983" and that such claims are properly understood as Fourth Amendment claims, "[f]or a plaintiff to state a § 1983 claim for malicious prosecution in relation to a seizure violative of the Fourth Amendment, the defendant(s) must have seized the Plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceedings must have terminated in the Plaintiff's favor" (internal quotation marks and omitted) (citing Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996))).

Probable cause will be found to exist when "the facts and circumstances within an officer's knowledge–or of which he possesses reasonably trustworthy information–are

sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). While probable cause demands "more than a mere suspicion, . . . evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinsky, 942 F.2d 257, 264 (4th Cir. 1991) (citation omitted).

Defendants presented several affidavits in support of their Motion for Summary Judgment. Shirley Singleton, currently the Associate Warden at Ridgeland Correctional Institution, stated in her Affidavit that she was a disciplinary hearing officer at the time of the incident in question and conducted Plaintiff's disciplinary hearing concerning the incident of August 4, 2006. (Singleton Aff. ¶¶ 1-3.) Singleton stated that at the hearing, she was presented with: (a) Captain DeLoach's incident report;[4] (b) a supplementary report from Officer Johnson that "details Inmate Plummer's involvement in the incident";[5] and (c) a

---

[4] Captain DeLoach's incident report indicates that his investigation "includes reports from OFC C. Johnson, OFC L. Cook, LT. D. Tyler, and Sgt. J. Rumph." This incident report states, "Inmate Jesus Gonzalez #304664 and Inmate Andrew Plummer #299191 were observed stomping and kicking Inmate Knotts in the head and chest area. This occurred in front of cell A-37 in Barnwell Unit. Officer C. Johnson directed the inmates to cease their actions. Inmates Gonzalez and Plummer left the area."

[5] Officer Johnson's Incident Report states that he "observed fighting in front of cell A-37," where he saw Inmate Bettis stab Inmate Knotts with a homemade weapon and kick Inmate Knotts "several times" in the head and chest area. Johnson's report further states, "Accompanying [Inmate] Bettis was [Inmate] Gonzalez . . . and [Inmate] Plummer . . . who also stomped and kicked [Inmate] Knotts to the head and chest area. I directed the following inmates to stop assaulting [Inmate] Knotts. [Inmate] Gonzalez and [Inmate] Plummer left the area." The report concludes by recommending that Inmates Bettis, Plummer, and Gonzalez "be charged with 810 striking an inmate with or without a weapon."

supplementary report of Lt. Tyler,[6] whose investigation "revealed that Plummer was involved in the incident and that it was gang-related." (Id. ¶ 7.) Singleton indicated there was a "preponderance of the evidence that inmate Plummer was involved." (Id. ¶ 9.)

Defendants also presented the Affidavit of Defendant Branham, a senior agent with the South Carolina Law Enforcement Division ("SLED"). Branham states in his Affidavit that he was assigned to lead the investigation "of an assault of several inmates" at Allendale Correctional Institution that occurred on August 4, 2006. (Branham Aff. ¶¶ 1-3.) Branham states that he reviewed copies of the SCDC Incident reports, which "revealed that Andrew Plummer, along with others, was involved in an attack on another inmate, Lafayette Knotts." (Id. ¶ 4.) Branham's Affidavit further states,

> 5. The Incident Report prepared by Captain Joseph Deloach outlines his investigation of the incident. . . . He relied on reports from Officers present during and immediately after the attack and on confidential information he received from inmates who were present and who observed the incident. Based on this information, he concluded that Andrew Plummer was one of the individuals who engaged in the attack on Inmate Knotts.
>
> 6. Special Agent Williams and I conducted numerous interviews and collected copies of all SCDC records and additional reports of SCDC Officers related to the inmates involved in the fight. . . . Although I attempted to interview inmate Plummer, my recollection is that he was uncooperative and I therefore did not interview him.
>
> 7. The solicitor involved in this matter was Tameaka Legette. I contacted the solicitor with the information collected in our investigation and it was determined that sufficient information was present to charge Andrew Plummer with Assault and Battery with Intent to Kill. At the direction of the Solicitor, I sought an arrest warrant for Plummer on this charge. The Magistrate found probable cause to exist and issued an arrest warrant for Andrew Plummer. . . . He was served with the warrant on August 17, 2006.
>
> 8. The Grand Jury returned an indictment against Andrew Plummer on the charge of Assault and Battery with Intent to Kill on October 23, 2006. . . .

---

[6]Singleton states in her Affidavit that Lt. Tyler's report is not attached to her Affidavit because it "is confidential in that it contains information from confidential informants." (Singleton Aff. ¶ 7.)

(Id. ¶¶ 5-8.)

However, not all evidence in the record indicates that Plaintiff assaulted another inmate. For example, a statement given by Corey Johnson on July 24, 2007, does not mention Plummer at all; in this statement, Johnson mentions only Gonzalez as accompanying Bettis. Johnson states, "Accompanying [Inmate] Bettis was [Inmate] Gonzalez . . . who also stomped and kicked [Inmate] Knotts to the head and chest area. I directed the following inmates to stop assaulting [Inmate] Knotts. [Inmate] Gonzalez left the area." It also appears that Plaintiff denied involvement in the altercation, stating he was in his cell. (See Disciplinary Report & Hearing Record.) Plaintiff filed a grievance on August 28, 2006, requesting that the hearing tapes be examined, asserting "verbal testimony" from his counsel substitute (Ms. Jones) would reveal that Officer Johnson reworded his original incident report such that Johnson's restatement revealed that Plaintiff "NEVER attempted or carried out any type of assault on Inmate Knotts." The Warden's response states, "You were found guilty [at the disciplinary hearing] based on the report of Captain Deloach, his testimony and the preponderance of evidence. Captain Deloach acknowledged that Officer Johnson's report was invalid; however, he (Captain Deloach) stated that he had other confidential information concerning your involvement."

Despite the conflicting evidence over whether Plaintiff was actually involved in the altercation, the undersigned concludes that probable cause existed. The magistrate judge found probable cause, and the grand jury indicted Plaintiff for the offense. "A grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983." Provet v. South Carolina, No. 6:07-1094-GRA-WMC, 2007 WL 1847849, at *5 (D.S.C. June 25, 2007) (citing Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (E.D. Pa. 1999), aff'd 225 F.3d 648 (3d Cir. 2000); Sibdhannie v. Coffey, No. Civ. A. 06-3394(PGS), 2006 WL 3780778 (D.N.J. Dec. 21, 2006)); see also Whitner v. Duke

11

Power, 277 S.C. 397, 288 S.E.2d 389 (1982) ("[A] true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution."). Moreover, Plaintiff alleges in his Complaint that Inmate Knotts falsely accused Plaintiff of involvement in the incident in question. (See Dkt. No. 1 at 2.) In light of the undisputed evidence that Plaintiff was indicted by a grand jury for Assault and Battery with Intent to Kill, the magistrate found probable cause, and Plaintiff's own allegation that an inmate accused him of involvement in the fight, the undersigned recommends granting summary judgment to Defendants on Plaintiff's § 1983 malicious prosecution claim.[7]

## C. Defendants' Remaining Arguments Concerning Plaintiff's § 1983 Claims[8]

As noted above, Defendants make several arguments pertaining to Plaintiff's § 1983 claims in their Motion for Summary Judgment. (See Dkt. No. 77.) Although the undersigned has addressed all of Plaintiff's § 1983 claims in Sections A and B above, two other arguments of Defendants warrant mention. First, Defendants argue they are entitled to summary judgment because the doctrine of *respondeat superior* is not applicable under 42 U.S.C. § 1983. (See Mem. in Supp. at 17.) Defendants are correct that § 1983 "will not support a claim based on a respondeat superior theory of liability." Polk County v. Dodson,

---

[7]Defendants have also moved for summary judgment on the basis of qualified immunity. Pursuant to the doctrine of qualified immunity, government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of what a reasonable person would have known" at the time the action was taken. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Pearson v. Callahan, 555 U.S. 223 (2009). Should the District Judge conclude summary judgment is not appropriate for the reasons set forth in Section A or Section B, the undersigned recommends concluding Defendants are entitled to qualified immunity on the grounds that the at-issue right was not clearly established. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier v. Katz, 533 U.S. 194, 202 (2001).

[8]To the extent Plaintiff seeks to bring a claim for defamation pursuant to § 1983, Defendants are entitled to summary judgment, as defamation is not actionable under § 1983. Paul v. Davis, 424 U.S. 693, 697-710 & nn. 3-4 (1976). Similarly, negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986).

454 U.S. 312, 325 (1981) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)); see also Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977). Defendant Ozmint is therefore entitled to summary judgment on this ground, as there is no evidence that Ozmint himself took any action with regards to the allegations in Plaintiff's Complaint. Because Plaintiff's allegations and the evidence in the record reveal personal involvement of Defendants Orr, Hagan, and Branham, they are not entitled to summary judgment on this ground. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("In a *Bivens* suit, there is no *respondeat superior* liability. Instead, liability is personal, based upon each defendant's own constitutional violations."); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Defendants also contend that Plaintiff may not recover punitive damages against them on his claims pursuant to § 1983. (See Mem. in Supp. at 20.) The undersigned agrees. Punitive damages may be awarded under § 1983 if a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987); Kinard v. Greenville Police Dep't, No. 6:10-cv-03246-JMC, 2011 WL 3439292, at *6 (D.S.C. Aug. 5, 2011). The undersigned concludes Plaintiff may not recover punitive damages pursuant to his § 1983 claims because there is no evidence of evil intent or a reckless or callous indifference to the Plaintiff's rights.

**D. Remaining claims**

In addition to his § 1983 claims, Plaintiff also alleges several causes of action pursuant to South Carolina law. Given the conclusion that Defendants are entitled to summary judgment on Plaintiff's § 1983 claims, the undersigned recommends dismissing Plaintiff's state law claims. See 28 U.S.C. § 1367(c); Kendall v. City of Chesapeake, 174 F.3d 437, 444 (4th Cir. 1999) (dismissal of the only federal cause of action gave the district

court discretion to decline to exercise supplemental jurisdiction over the remaining state law claim); Furtick v. Mills, No. 4:08-1749-CMC-TER, 2008 WL 5378266, at *2 (D.S.C. Dec. 24, 2008) ("It is this court's customary practice to decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed in advance of trial.").

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the District Court partially summarily dismiss the Complaint in this case as to Defendants Elaine Sabb and Woodrow Gooding, Jr. without prejudice and without issuance and service of process. It is further RECOMMENDED that the Motion for Summary Judgment (Dkt. No. 77) filed by Defendants Orr; Hagan; Ozmint; and Branham be granted as to Plaintiff's federal claims, that Plaintiff's state-law claims be dismissed without prejudice, and that this case be closed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

December 9, 2011
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).